

Lincoln@BandlowLaw.com

July 2, 2020

Via CM/ECF

Mr. Mark Langer
Clerk of the Court
U.S. Court of Appeals for the District of Columbia Circuit
333 Constitution Avenue, NW
Washington, D.C. 20001

      Re:    *Strike 3 Holdings, LLC v. John Doe Subscriber Assigned IP Address 73.180.154.14*, No. CV 18-7188

             Citation of Supplemental Authority under Federal Rule of Appellate Procedure 28(j), *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *1 (D.N.J. June 30, 2020).

Dear Mr. Langer:

      In its brief, Amicus extensively discussed a decision from a Magistrate Judge in the District of New Jersey, which denied early discovery as was done in the decision on appeal here. That decision has been reversed in an opinion that refutes many of Amicus's arguments.

      Specifically, the Court rejected the arguments that (1) Appellant's complaint does not state a plausible claim against the anonymous subscriber, finding it "unmistakably allege[s]" the element of copying, and that the Magistrate Judge erred by not attaching a presumption of truth to these allegations, *id.* at *5-7; (2) Appellant had shown "good cause" to conduct expedited discovery, *id.* at *8-9; (3) reference to the DMCA is "both unwarranted and not relevant," *id.* at *9-10; and (4) "truly speculative" privacy concerns, although important, "do not warrant denial of Plaintiff's discovery requests," finding instead that "entry of a limited protective order strikes the right balance of interest and that any concerns about misidentification or privacy exposure are easily assuaged through implementation of an appropriate protective order." *Id.* at *10-11.

      Equally important are the issues the Court declined to address, or omitted entirely, when reversing the Magistrate Judge. The Court found that concerns whether the subscriber would ultimately prove to be the infringer were "untimely" and "premature." *Id.* at *7. Also absent is any indication that the adult content required disparate treatment. *Id.* at *1. And although the Magistrate Judge contrived a novel interpretation of *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142 (9th Cir. 2018), that decision found no place in the Court's reversal, since *Cobbler* concerns what facts must be alleged *after* early discovery is permitted.

LAW OFFICES OF LINCOLN BANDLOW
A Professional Corporation

1801 Century Park East, Suite 2400, Los Angeles, CA 90067 • (310) 556-9680 • (310) 861-5550 • www.bandlowlaw.com



Mr. Mark Langer
July 2, 2020
Page 2

      After concluding that "good cause" existed to permit early discovery of this "crucial evidence" – and that the Magistrate Judge's decision, which found its "genesis" in the decision on appeal here, required reversal because it was "not just" and contrary to Fed. R. Civ. P. 1, *id.* at *11 – the Court remanded with specific instructions to permit early discovery subject to a protective order.  Appellant respectfully submits a similar reversal and remand is appropriate here.

      Respectfully submitted,

      Lincoln D. Bandlow
      Counsel for Appellant
      Strike 3 Holdings, LLC

cc:    All Counsel (Via CM/ECF)



## CERTIFICATE OF COMPLIANCE

I hereby certify that this letter complies with the type-volume limitation of Federal Rule of Appellant Procedure 28(j) because the body of the letter contains 344 words.

By: _____
Lincoln D. Bandlow

2020 WL 3567282
Only the Westlaw citation is currently available.
United States District Court, D. New Jersey.

STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 173.71.68.16, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 76.116.36.190, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 76.116.76.28, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 76.116.4.83, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 173.71.88.194, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 173.61.123.185, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 73.199.120.248, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 76.116.3.105, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 73.194.76.148, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 76.116.95.148, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 174.57.174.87, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 73.215.174.234, Defendant.
STRIKE 3 HOLDINGS, LLC, Plaintiff,
v.
JOHN DOE subscriber assigned IP address 73.80.57.239, Defendant.

1:18-cv-2674-NLH-JS
|
1:18-cv-12585-NLH-JS
|
1:18-cv-12586-NLH-JS
|
1:18-cv-16564-NLH-JS
|
1:18-cv-16565-NLH-JS
|
1:18-cv-16566-NLH-JS
|
1:18-cv-17594-NLH-JS
|
1:18-cv-17595-NLH-JS
|
1:19-cv-00894-NLH-JS
|
1:19-cv-00895-NLH-JS
|
1:19-cv-14014-NLH-JS
|
1:19-cv-14015-NLH-JS
|
1:19-cv-14016-NLH-JS
|
Filed 06/30/2020

**Attorneys and Law Firms**

APPEARANCES

JOHN C. ATKIN THE ATKIN FIRM, LLC 55 MADISON AVENUE SUITE 400 MORRISTOWN, NJ 07960 Counsel for Plaintiff.



**OPINION**

[NOEL L. HILLMAN](#), U.S.D.J.

**\*1** The above-captioned matters, assigned to this Court pursuant to [Local Civil Rule 40.1(e)](#) and by Order of the Chief Judge,[1] come before this Court on appeal by Plaintiff Strike 3 Holdings, LLC ("Plaintiff") of Magistrate Judge Schneider's (the "Magistrate Judge") order (1) denying Plaintiff expedited discovery in aid of identifying placeholder, John Doe defendants (all defendants will be collectively referred to as "Defendants") and (2) denying Plaintiff an extension of time within which to serve Defendants with process. (ECF No. 31). For the reasons that follow, this Court will grant Plaintiff's appeal and reverse the decision of the Magistrate Judge. Subject to entry of a protective order to be entered at the Magistrate Judge's discretion, Plaintiff will be granted leave to serve a subpoena upon Defendants' Internet Service Provider ("ISP") pursuant to [Rule 45 of the Federal Rules of Civil Procedure](#) ("Rule 45"). That subpoena will be limited in scope, but will permit Plaintiff to seek the name and address of the subscribers to the Internet Protocol ("IP") addresses identified in the captions of these matters for the time periods of alleged infringement as identified in the various complaints. Plaintiff will also be granted an extension of time within which to effectuate service.

**BACKGROUND**

Plaintiff is an intellectual property holding company that owns the rights to various adult films. (ECF No. 1 ("Compl.") at ¶2).[2] Plaintiff's films are often pirated through online peer-to-peer file sharing networks and BitTorrent[3] distribution platforms. (Compl. at ¶4). To combat piracy of its films, Plaintiff identifies infringers by tracing the pirated content back to downloader and sharer IP addresses. See (Compl. at ¶¶9, 24, 26). Once an infringer's IP address is identified, Plaintiff uses geolocation and other computer forensic techniques to pinpoint the location, date, and time of the infringing activity. See (Compl. at ¶9). Plaintiff then files suit against the subscribers to the infringing IP address and seeks expedited discovery to help uncover the true identity of the infringer or infringers.

**\*2** In these cases, Plaintiff alleges Defendants used peer-to-peer sharing networks to unlawfully download their films, without permission and in violation of the Copyright Act, [17 U.S.C. § 101, *et seq.*](#) (Compl. at ¶23) ("Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures"); (Compl. at ¶27) ("Defendant downloaded, copied, and distributed a complete copy of each of Plaintiff's Works without authorization"). Plaintiff traced the downloaded files to Defendants' IP addresses. (Compl. at ¶24).

Armed with the IP address and infringement information it gathered, Plaintiff sued the subscribers of the infringing IP addresses. Shortly thereafter, Plaintiff filed motions for leave to serve early [Rule 45](#) subpoenas on the ISPs hosting the infringing IP addresses to discover the subscribers' identities. (ECF No. 4); (ECF No. 4-1 at 2) ("Strike 3 seeks leave of Court to serve a [Rule 45](#) subpoena on John Doe Defendant's ISP. This subpoena will only demand the true name and address of John Doe Defendant. Strike 3 will only use this information to prosecute the claims made in its Complaint"). Without that information, Plaintiff argues it "cannot serve John Doe Defendant nor pursue this lawsuit and protect its copyrights." (ECF No. 4-1 at 3).

On May 31, 2019 and July 23, 2019, the Magistrate Judge invited the parties to appear for evidentiary hearings and oral argument on Plaintiff's motion for expedited discovery. On October 31, 2019, the Magistrate Judge issued an omnibus opinion and order denying Plaintiff's motion for leave to proceed with early third-party discovery and for an extension of time to serve Defendants. The opinion explained that the "fundamental basis of the Court's decision is its conclusion that, as pleaded, Strike 3's complaints are futile." [Strike 3 Holdings, LLC v. Doe, No. 18-cv-12585 (NLH/JS), 2019 WL 5446239, at \*1 (D.N.J. Oct. 24, 2019)](#). Essentially, because the Court found the complaint did not state a viable claim, expedited discovery was not necessary. See Id. ("The Court denies Strike 3 the right to bootstrap discovery based on a complaint that does not pass muster under [Fed. R. Civ. P. 12(b)(6)](#)."). Separately, the court found that even if the complaints were actionable, Plaintiff had not shown good cause to warrant expedited discovery. The court identified seven reasons underscoring its conclusions:

(1) Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to be true;

(2) Strike 3's subpoenas are misleading and create too great of an opportunity for misidentification;

(3) the linchpin of Strike 3's good cause argument, that expedited discovery is the only way to stop infringement of its works, is wrong;

(4) Strike 3 has other available means to stop infringement besides suing individual subscribers in thousands of John Doe complaints;

(5) the deterrent effect of Strike 3's lawsuits is questionable;

(6) substantial prejudice may inure to subscribers who are misidentified; and

(7) Strike 3 underestimates the substantial interest subscribers have in the constitutionally protected privacy of their subscription information.

Strike 3, 2019 WL 5446239, at *1.

Additionally, before the Magistrate Judge were motions for extension of time within which to effectuate service of process. (ECF No. 5). Because the court found the matters could not proceed as pled, it denied Plaintiff's motion for an extension of time within which to serve Defendants. (ECF No. 29) ("the Court entered Orders denying plaintiff's Motions for Discovery and Motions for an Extension of Time in Which to Effectuate Service of Process."). In related actions where the Court had previously granted such applications, the Court vacated those orders to align with its decision. Strike 3, 2019 WL 5446239, at *16 ("[t]o the extent these motions have been previously granted, and the defendant has not yet been served, the Orders will be vacated.").

**\*3** On October 31, 2019, Plaintiff timely appealed the Magistrate Judge's decision. (ECF No. 31). Those appeals are ripe for this Court's review.

### DISCUSSION

I. Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as Plaintiff asserts a claim under the Copyright Act, 17 U.S.C. § 101, *et seq.*

II. Legal Standard For Review Of The Magistrate Judge's Decision

The standard of review to be applied in reviewing decisions of magistrate judges depends upon whether the issue adjudicated is dispositive or non-dispositive of a party's claims. Pursuant to the Federal Magistrate Act of 1979, 28 U.S.C. § 636, *et seq.* and the Federal Rules of Civil Procedure, a United States Magistrate Judge may "hear and determine any [non-dispositive] pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A); see Fed. R. Civ. P. 72; see L. Civ. R. 72.1(a)(1). If a magistrate judge rules on a non-dispositive matter, a district judge should reconsider that decision only where the magistrate judge's order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Magistrate judges may also, upon referral from a district judge, recommend disposition of dispositive matters. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In doing so, the magistrate judge submits to a district judge "proposed findings of fact and recommendations" for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). If a party objects to the magistrate judge's proposed findings, a district court judge must make a *de novo* determination of those portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(3).

Pretrial discovery determinations are routinely treated as non-dispositive matters. Andrews v. Goodyear Tire & Rubber Co., 191 F.R.D. 59, 67–68 (D.N.J. 2000) (collecting cases); Patterson v. City of Perth Amboy, No. 06-cv-4780(KSH), 2007 WL 3054939, at *2 (D.N.J. Oct. 11, 2007) (citing Williams v. American Cyanamid, 164 F.R.D. 615, 617 (D.N.J. 1996)) ("[d]iscovery orders are generally considered non-dispositive"). There are, however, exceptions to the general rule. See, e.g., N.L.R.B. v. Frazier, 966 F.2d 812, 816 (3d Cir. 1992) (under unique facts, finding a magistrate judge's decision on whether to enforce a subpoena should have been treated as dispositive and reviewed by the district court judge *de novo*); Patterson, 2007 WL 3054939, at *2 (treating a motion to supplement an expert report as dispositive where denial of that motion would have dispositive implications on a particular claim). The facts of each case and the context of each motion must be considered when deciding whether to treat resolution of a particular issue as dispositive or non-dispositive.

Plaintiff persuasively argues that the motions for expedited discovery and for an extension of time to effectuate service decided by the Magistrate Judge have a dispositive impact on its claim, as denial of those motions leaves Plaintiff without a means for discovering the identity of the placeholder Defendants, essentially preventing it from proceeding with these actions. (ECF No. 31-1 at 7) ("the Magistrate Judge ... denied Plaintiff's motions for an extension of time to serve process, pursuant to Rule 4(m), thereby requiring that each matter "must" be dismissed for failure to make timely service, if not for failure to state a claim"). Without leave to seek identifying information for subscribers of the named-IP addresses, Plaintiff's actions grind to halt, languishing on our docket until such time as the Court dismisses them for failure to prosecute or failure to make timely service. While not dispositive in name, the thoughtful and comprehensive ruling of the Magistrate Judge on the issues joined by these appeals are dispositive in practical effect. Under the circumstances, the Court finds the safest path forward requires it to review the Magistrate Judge's decision *de novo*.

III. Plaintiff's Motion For Expedited Discovery

**\*4** Plaintiff seeks discovery in aid of its efforts to identify the true identity of the placeholder, John Doe Defendants. (ECF No. 4). This discovery is sought in an expedited fashion and before the parties have met and conferred pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

Rule 26(d)(1) generally prohibits parties from seeking discovery "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). Notwithstanding, district courts possess broad discretion in managing the discovery process and may expedite or otherwise alter its timing or sequence. In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982) ("matters of docket control and conduct of discovery are committed to the sound discretion of the district court"); Business Ass'n of University City v. Landrieu, 660 F.2d 867, 877 (3d Cir. 1981).

Rule 26(d) does not set a standard for determining when expedited discovery should be permitted. Techtronic Indus. N. Am., Inc. v. Inventek Colloidal Cleaners LLC, No. 13-cv-4255 (NLH/JS), 2013 WL 4080648, at \*1 (D.N.J. Aug. 13, 2013) (citing Better Packages, Inc. v. Zheng, 05–cv-4477(SRC), 2006 WL 1373055, at \*2 (D.N.J. May 17, 2006)). Absent guidance from the rule itself, courts in this District have fashioned two standards for assessing whether expedited discovery is appropriate, the most prominent of which has been labeled the "good cause standard." Manny Film LLC v. Doe Subscriber Assigned IP Address 50.166.88.98, 98 F. Supp. 3d 693 (D.N.J. 2015) ("[a] good cause standard governs whether to permit discovery prior to a Rule 26(f) conference"); see Sawhorse Enterprises, Inc. v. Church & Dwight Co., No. 12-cv-6811 (FLW), 2013 WL 1343608, at \*2 (D.N.J. Apr. 3, 2013); Techtronic, 2013 WL 4080648, at \*1. "Courts faced with motions for leave to serve expedited discovery requests to ascertain the identity of John Doe defendants in internet copyright infringement cases often apply the 'good cause' test." Modern Woman, LLC v. Does I–X, No. 12–4859, 2013 WL 707908, at \*2 (D.N.J. Feb. 26, 2013) (citations omitted). The Court applies that standard here.

Under the good cause test, whether to permit expedited discovery is decided by considering the totality of the circumstances and the balancing of the interests of the plaintiff and defendant. Better Packages, 2006 WL 1373055, at 3 (courts consider "the entirety of the record ... and the reasonableness of the request in light of all of the surrounding circumstances") (citation and internal quotation marks omitted). Good cause exists where the "need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." Malibu Media, LLC v. John Doe, No. 16-cv-942 (KM/MAH), 2016 WL 952340, \*1 (D.N.J. Mar. 14, 2016) (citation omitted); Better Packages, 2006 WL 1373055, at \*3.

A non-exclusive list of factors courts typically examine in conducting the good cause analysis include: (1) the timing of the request in light of the formal start to discovery; (2) whether the request is narrowly tailored; (3) the purpose of the requested discovery; (4) whether the discovery burdens the defendant; and (5) whether the defendant can respond to the request in an expedited manner. See Better Packages, 2006 WL 1373055, at \*3. Other courts have offered related but different factors for consideration, including (1) the plaintiff's ability to make out a *prima facie* showing of infringement, (2) the specificity of the discovery request, (3) the absence of alternative means for obtaining the information sought in the subpoena, (4) the need for the information sought in order to advance the claim, and (5) the defendant's expectation of privacy. Strike 3 Holdings, LLC v. Doe, 329 F.R.D. 518, 521 (S.D.N.Y. 2019) (citing Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010)). Because these factors are all relevant to the Court's current inquiry, the Court considers them all as part of its analysis.

**\*5** In conducting any discovery inquiry, the Third Circuit has suggested that district courts risk reversal if their rulings will make it impossible for any party to "obtain crucial evidence[.]" See In re Fine Paper Antitrust Litig., 685 F.2d at 818 (3d Cir. 1982) (quoting Eli Lilly & Co. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1105 (5th Cir. 1972)) ("[the Third Circuit] will not upset a district court's conduct of discovery procedures absent 'a demonstration that the court's action made it impossible to obtain crucial evidence' ").

With these guideposts established, the Court turns to the intricacies of Plaintiff's motion.

### A. Plaintiff Has Pled A Prima Facie Case For Copyright Infringement

At the pleading stage, a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)) (alterations in original and citations omitted). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. (quoting Iqbal, 556 U.S. at 664, 675, 679). Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. (quoting Iqbal, 556 U.S. at 664, 675, 679). The focus, therefore, is not on whether the plaintiff will ultimately be able to prove each fact alleged in the complaint, but simply whether, if such facts are later proven to be true, the plaintiff has stated a legally actionable claim.

Plaintiff advances a single claim for copyright infringement. To state a claim for copyright infringement, Plaintiff must allege that it (1) owns of a valid copyright, and (2) Defendants copied constituent elements of the work that are the original. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc., 499 U.S. 340, 361 (1991); In re McGraw-Hill Glob. Educ. Holdings LLC, 909 F.3d 48, 67 (3d Cir. 2018).

Plaintiff alleges that it owns valid copyrights to the material Defendants allegedly pirated. (Compl. at ¶31) ("Plaintiff owns the copyrights to the Works"). Plaintiff also identifies the registered copyrights that Defendants allegedly infringed by what appear to be their registration numbers, see (ECF No. 1-1), along with other identifying information placing Defendants on notice of the specific claims against them. These facts, as alleged, sufficiently satisfy the first element of a copyright infringement claim.

Plaintiff also clearly alleges that Defendants pirated Plaintiff's copyrighted material by downloading it through peer-to-peer sharing platforms. See, e.g., (Compl. at ¶4) ("Using the BitTorrent protocol, Defendant is committing rampant and wholesale copyright infringement by downloading Strike 3's motion pictures as well as distributing them to others. Defendant did not infringe just one or two of Strike 3's motion pictures, but has been recorded infringing 36 movies over an extended period of time"); (Compl. at ¶23) ("Defendant used the BitTorrent file network to illegally download and distribute Plaintiff's copyrighted motion pictures"); (Compl. at ¶27) ("Defendant downloaded, copied, and distributed a complete copy of each of Plaintiff's Works without authorization"). Plaintiff (1) identifies the infringing Defendant; (2) identifies the ISP hosting the infringing IP address; (3) identifies the city and state where the infringing activity occurred; (4) identifies the number of works infringed; and (5) identifies what appears to be the date and time of each infringing activity. See (ECF No. 1-1). These allegations unmistakably allege that Defendants infringed upon Plaintiff's copyrighted material by downloading copies of protected works. Therefore, Plaintiff states a *prima facie* case for copyright infringement. See, e.g., Strike 3 Holdings, LLC v. Doe, 329 F.R.D. 518, 521 (S.D.N.Y. 2019) (reaching the same conclusion).

### B. The Court Below Erred In Concluding Plaintiff Failed To State A Prima Facie Case Of Copyright Infringement

**\*6** In finding that Plaintiff failed to state a *prima facie* claim, the Magistrate Judge considered material outside of the complaint and drew inferences against Plaintiff in

determining the complaint would later fail, both of which constitute reversible error.

First, in reviewing material beyond the four-corners of the complaint, the court found that Plaintiff's allegations were hollow and would later prove to be untrue. See Strike 3 Holdings, LLC v. Doe, 2019 WL 5446239, at *1 ("Strike 3 bases its complaints on unequivocal affirmative representations of alleged facts that it does not know to be true"). The Third Circuit requires, however, that where well-pled factual allegations exist, court should "assume their veracity" at the pleading stage. Malleus, 641 F.3d at 563 (citing Iqbal, 556 U.S. at 664, 675, 679); see Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (Third Circuit cautioned that courts should permit "discovery before testing a complaint for factual [as opposed to legal] sufficiency"). As identified above, Plaintiff pleads, quite clearly, that it owned the rights to films that these Defendants pirated on particular dates and times, and from particular locales. In reaching its conclusion, the Magistrate Judge applied the opposite standard to the facts alleged, presuming their falsity based on information it gathered from outside of the complaint as opposed to their accuracy. Such constitutes reversible error.

Relatedly, the Magistrate Judge found that Plaintiff's allegations failed to show its entitlement to relief from "the named John Doe" Defendants. Strike 3, 2019 WL 5446239, at *7 ("Strike 3's complaints are devoid of facts sufficient to show it is entitled to relief from the named John Doe/IP subscriber"). The court essentially found that the John Doe Defendants pled in the complaint were not shown to be synonymous with the subscribers of the infringing IP addresses, and therefore, Plaintiff failed to state a claim against the underlying, not-yet-identified defendants. See id. ("The only material fact pleaded in Strike 3's complaints is that the listed IP address is associated with the downloading of Strike 3's works and the John Doe is the subscriber of the address. All other material averments in Strike 3's complaints, e.g., that the John Doe subscriber downloaded Strike 3's works, are conclusory statements, not facts.").

The court's error is a nuanced one. First, the Court begins with the familiar rule that courts must take as true well-pled factual averments in a complaint and should "assume their veracity" at the pleading stage. Malleus, 641 F.3d at 563 (citing Iqbal, 556 U.S. at 664, 675, 679). That requirement also requires courts to accept Plaintiff's choice in identifying particular defendants, even if the chosen defendant is presently identified as a John Doe, and assume the facts alleged against that defendant accurately capture that defendant's actions. See gen. Jacobsen v. Osborne, 133 F.3d 315, 321 (5th Cir. 1998) (in pleading a "John Doe" defendant, there is no "mistake" in "identifying the correct defendant; rather, the problem was not being able to identify that defendant."). In other words, determining whether the defendant named in an action is in fact the defendant against whom liability will ultimately stand necessarily implicates an analysis of material outside the four-corners of the complaint, and considering whether the pled defendant is the wrong defendant at the pleading stage is inappropriate. Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596, 609 (D.N.J. 2003), rev'd on other grounds sub nom. Levine v. United Healthcare Corp., 402 F.3d 156 (3d Cir. 2005) ("defendants' argument that they are the 'wrong' defendants does not warrant relief on this motion to dismiss") (additional citations omitted); see Roche v. Aetna, Inc., 167 F. Supp. 3d 700, 714 (D.N.J. 2016) (denying motion to dismiss where the defendants alleged the plaintiff had sued the wrong party, as such an argument constituted a genuine dispute of material fact to be decided at a later stage).

**\*7** Other courts have reached similar conclusions. See gen. Strike 3 Holdings, LLC v. Doe, No. 1:18-cv-01490 EAW, 2019 WL 1529339, at *4 (W.D.N.Y. Apr. 8, 2019) ("determining whether Plaintiff's method for identifying copyright infringers is 'flawed' would not be appropriate at this stage. Such an argument addresses Defendant's ultimate liability"); see also id. ("Plaintiff is not required to 'sufficiently *establish*[ ] [D]efendant did the infringing' at the pleading stage [....] Rather, Plaintiff must only allege facts 'that allow[ ] the court to *draw the reasonable inference* that the defendant is liable for the misconduct alleged.' ") (citations omitted). If a court believes more facts are necessary to clarify a cause of action or the proper party in interest, the parties are capable, under the rules, of exploring such matters in discovery and at later stages of litigation. See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) ("[t]his simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.").

Further support can be found in Third Circuit precedent on pleading placeholder defendants. Pleading facts that create a cause of action against a presently unknown defendant occurs

quite frequently in this Circuit and has been permitted by the Court of Appeals. Blakeslee v. Clinton Cty., 336 F. App'x 248, 250 (3d Cir. 2009) ("Use of John Doe defendants is permissible in certain situations until reasonable discovery permits the true defendants to be identified"). As the Third Circuit has recognized, "[p]laintiffs may be unaware of the identities and roles of relevant actors and [may be] unable to conduct a pre-trial investigation to fill in the gaps." Alston, 363 F.3d at 233 n.6. By itself, however, this "lack of knowledge does not bar entry into a federal court." Id. Consistent with notice pleading rules and liberal discovery rules, meritorious claims must be permitted to proceed even if a plaintiff cannot adduce all the necessary facts at the outset, including the identify of the Defendant. See id. (citing Hindes v. FDIC, 137 F.3d 148, 155 (3d Cir. 1998)). Under such circumstances, "[t]he plaintiff should be given an opportunity through discovery to identify the unknown defendants[.]" Id. (quoting Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980)).

The Circuit Court has instructed that "[i]f discovery is sought by a plaintiff, as it was here, and if it would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it." Id. Of particular relevance, the Circuit Court held that "[b]ecause [the] complaint was dismissed before an opportunity for discovery, any expectation of factual sufficiency was premature. It is a first principle of federal civil procedure that litigants 'are entitled to discovery before being put to their proof.' " Id. (quoting Bennett v. Schmidt, 153 F.3d 516, 519 (7th Cir. 1998)).

Because Plaintiff has sufficiently stated a viable claim of copyright infringement against the identified IP addresses and its placeholder-defendant subscribers, Plaintiff should be provided with discovery to further assist it in identifying the underlying wrongdoer. Any consideration of the merits of Plaintiff's actions before permitting discovery to identify the placeholder-defendants, including whether Plaintiff has sued the correct Defendants, would be untimely. Alston, 363 F.3d at 233 n.6. While it is true that if "reasonable discovery does not unveil the proper identities, ... the John Doe defendants must be dismissed[,]" such considerations are simply premature at this juncture and must await the result of the limited discovery Plaintiff will be permitted to take. [4] Blakeslee, 336 F. App'x at 250 (emphasis added).

### C. Good Cause Exists To Permit Limited Expedited Discovery So Plaintiff Can More Definitely Identify Its Placeholder Defendants

**\*8** For the reasons discussed above, discovery of the type Plaintiff seeks should be awarded at risk of otherwise leaving Plaintiff without access to crucial evidence in support of its claim. In re Fine Paper Antitrust Litig., 685 F.2d at 818; Alston, 363 F.3d at 233 n.6. Now the Court must determine whether that discovery should be provided in an expedited fashion. Common sense dictates that early discovery is required in this instance so these cases can either proceed or be dismissed. The good cause factors do not alter that conclusion.

The first good cause factor, the timing of the request in light of the formal start to discovery, is not particularly relevant to this Court's determination. Alston counsels in favor of permitting Plaintiff the narrow discovery it seeks at this early stage of litigation. 363 F.3d at 233 n.6 ("[i]f discovery is sought by a plaintiff, as it was here, and if it would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it."). Following Alston, the Court finds this factor weighs in favor of permitting expedited discovery of the limited type Plaintiff seeks.

The second good cause factor, whether the request is narrowly tailored, also warrants permitting the discovery sought. Plaintiff seeks only the name and permanent address of the IP address subscribers. Such identifying information is narrowly tailored, requesting no more than would be required to identify the relevant individual. Manny Film LLC, 98 F. Supp. 3d at 695 (permitting the plaintiff to seek early discovery on the name and address of an internet subscriber whose IP address had been identified as allegedly engaging in copyright infringement); Malibu Media, LLC v. John Does 1–18, No. 12–cv-7643, 2013 Dist. LEXIS 155911 (D.N.J. Mar. 22, 2013) (same); Strike 3 Holdings, LLC v. Doe, 329 F.R.D. 518, 521 (S.D.N.Y. 2019) ("Strike 3 seeks only the true name and permanent address of John Doe .... The Court agrees that the Plaintiff here is not asking for more information than is necessary to identify and serve the Defendant"); see Malibu Media, LLC v. Doe No. 4, 12-cv-2950 (JPO), 2012 WL 5987854, at \*3 (S.D.N.Y. Nov. 30, 2012) ("Malibu's subpoena request is highly specific in nature; it seeks the name, current and permanent address, e-

mail address, and Media Access Control (MAC) Address of each Doe defendant, attempting to obtain enough information to identify and serve the defendants"); Arista Records, 604 F.3d at 119.

The third good cause factor, the purpose of the requested discovery, is clear and narrow: to identify the subscribers of IP addresses connected with various copyright infringement activities. See Strike 3, 2019 WL 5446239, at *9 ("[t]he Court is not unsympathetic to Strike 3's argument that without the requested discovery it may not be able to identify alleged copyright infringers."). Binding Circuit-level precedent advises courts to grant limited discovery in circumstances where a plaintiff may not otherwise have access to means for identifying John Doe defendants. See, e.g., Alston, 363 F.3d at 233 n.6. Therefore, this factor weighs in Plaintiff's favor.

The fourth good cause factor, whether the discovery burdens the defendant, does not preclude authorizing such discovery in these cases. In the most literal sense, the discovery sought imposes no burden at all on Defendants, as it is sought from and will be produced by a third-party, the ISP. For the same reason, the fifth good cause factor, whether the defendant can respond to the request in an expedited manner, also serves as no barrier to granting the relief sought.

**\*9** Numerous other courts in this District have reached similar conclusions, ultimately deciding to permit service of a Rule 45 subpoena limited to seeking the name and address of the IP address subscriber. For example, in Malibu Media, LLC v. John Does 1-11, a similar type of action, the plaintiff sought leave to serve a subpoena demanding that an ISP reveal a John Doe defendant's name, address, telephone number, and email address. No. 12-7615, 2013 U.S. Dist. LEXIS 26217, at *3-4 (D.N.J. Feb. 26, 2013). The court granted the plaintiff's request for early, expedited discovery, but limited the discovery request to the information absolutely necessary to allow it to continue prosecuting its claims: the defendant's name and address. Id. at *3. Other courts have charted similar paths. See, e.g., Strike 3 Holdings, LLC v. John Doe subscriber assigned IP address 71.187.158.57, No. 19-cv-14006-ES-MAH, 2019 WL 4187573 (D.N.J. Sept. 3, 2019) (collecting the cases that follow); Malibu Media, LLC v. Doe, No. 13-4660 (JAP)(DEA), 2013 U.S. Dist. LEXIS 189452 at *2 (D.N.J. Aug. 19, 2013) (limiting the scope of a pre-Rule 26(f) conference subpoena to a subscriber's name and address); Voltage Pictures v. Doe, No. 12-6885 (RMB)(JS), 2013 U.S. Dist. LEXIS 155356, at *9-10 (D.N.J. May 31, 2013) (granting leave to serve subpoena requesting only the name, address, and media access control address associated with a particular IP address). This Court is not aware of any other means by which Plaintiff could gather the information it seeks, and the narrow nature of its requests appear to provide the only reasonable way to obtain it. Such further militates in favor of granting the relief sought. Strike 3 Holdings, LLC v. Doe, 329 F.R.D. 518, 521–22 (S.D.N.Y. 2019).

In total, the Court finds the good cause factors weigh in favor or reversing the Magistrate Judge's decision and permitting Plaintiff to proceed with expedited discovery of the nature sought.

D. Other Considerations Do Not Bar The Relief Sought

The Magistrate Judge identified additional considerations, some of which the Court addresses here, that it thought warranted denial of expedited discovery. These considerations do not bar the discovery sought.

First, the Magistrate Judge concluded that because other means exist to combat infringement, Plaintiff should not receive expedited discovery in this lawsuit. Strike 3, 2019 WL 5446239, at *12. According to the court, the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(a), "affords copyright owners such as Strike 3 a process to notify ISP's of the infringement of their works. The ISP's are then required to act on valid notifications and to terminate, in appropriate circumstances, subscribers and account holders who are repeat offenders." Strike 3 Holdings, 2019 WL 5446239, at *13. The court appears to fault Plaintiff for not pursuing this alternative route before filing the present actions. That criticism, however, is both unwarranted and not relevant to the issues before this Court.

First, there is nothing in the DMCA that suggests that merely because the statute allows a copyright owner the ability to compel ISPs to bar repeat offenders from using their services that the copyright right owner loses its statutory, and indeed constitutional right to sue infringers and seek the broader range of remedies provided by the Copyright Act. See gen. 17 U.S.C. § 501(a)-(b) ("anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright" and "the legal or beneficial owner of an

exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it."). Indeed, the DMCA was intended to protect ISPs, not infringers. The DMCA "did not simply rewrite copyright law for the on-line world." CoStar Grp., Inc. v. LoopNet, Inc., 373 F.3d 544, 553 (4th Cir. 2004) (quoting Ellison v. Robertson, 357 F.3d 1072, 1077 (9th Cir. 2004)). Instead, it simply offered "certain safe harbor[s] for ISPs" but left courts free to "continue to construe the Copyright Act in deciding the scope and nature of *prima facie* liability." CoStar Grp., 373 F.3d at 553. In other words, the DMCA merely added a second step to assessing infringement liability for Internet service providers, but is otherwise irrelevant to determining what constitutes a *prima facie* case of copyright infringement for ISPs or others. Id. at 555.

**\*10** Indeed, review of the DMCA suggests that Plaintiff should be granted, not denied, the discovery it seeks. The DMCA limits the liability of internet service providers for copyright infringement that occurs at the hand of a subscriber. See 17 U.S.C. § 512(a) ("[a] service provider shall not be liable for ... infringement of copyright by reason of the provider's transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider...."). The actions before this Court do not seek relief against an ISP, but rather a subscribing infringer, and in such circumstances, the DMCA actually supports granting Plaintiff the discovery it seeks in these actions.

Section h of the DMCA is entitled "subpoena to identify infringer" and provides that "[a] copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer in accordance with this subsection." 17 U.S.C. § 512(h)(1). Any such subpoena "shall authorize and order the service provider ... to expeditiously disclose to the copyright owner or person authorized by the copyright owner <u>information sufficient to identify the alleged infringer</u> of the material described in the notification to the extent such information is available to the service provider." 17 U.S.C. § 512(h)(3) (emphasis added). In not unclear terms, the DMCA supports this Court's reversal and decision to grant Plaintiff leave to pursue discovery from the ISPs that will allow it to "identify the alleged infringer[.]"

Second, the court below raised valid concerns about the risks of misidentification and embarrassment. In part, the court found Strike 3's subpoenas misleading and thought they created too much opportunity for misidentifying the proper defendant. Strike 3, 2019 WL 5446239, at \*11. Relatedly, the court expressed concerns about risks associated with inadvertent identification or exposure of alleged infringers, who, later, are deemed to be misidentified. Such could, the court found, expose that wrongly identified person to unwarranted embarrassment and ridicule. These are meritorious concerns that this Court does not view lightly.

On the one hand, Defendants have a legitimate privacy interest in their online activity. Some courts have gone so far as to find that internet users have constitutional privacy interests in their internet browsing and file-sharing activity. Malibu Media, LLC v. John Does 1-11, No. 12-civ-3810(ER), 2013 WL 3732839, at \*5 (S.D.N.Y. July 16, 2013) (recognizing "a limited First Amendment privacy interest in anonymous internet usage, including the use of peer-to-peer file sharing networks"). On the other hand, however, courts recognize that these privacy interests must not be used as a shield behind which internet users can commit unabated, legally actionable behavior. See Arista Records, 604 F.3d at 119 ("[t]he First Amendment right to communicate anonymously is, of course, not a license to ... infringe copyrights.... Nor is it an absolute bar against disclosure of one's identity in a proper case"). In general, privacy rights do not grant users a license to infringe on copyrighted material. Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by subscribers or other persons, it is unprotected by the First Amendment. Arista Records, 604 F.3d at 118.

As in many areas raising issues of constitutional concern and conflicting provisions, the Court's duty is to strike a proper balance between Defendants' privacy interests and Plaintiff's rights to protect its copyrighted material. As the Court has noted, Plaintiff has alleged with the requisite specificity required by even heightened pleading standards that someone using the identified IP addresses violated its copyrights. The Founding Fathers had the foresight to recognize that such rights are worthy of recognition in the Constitution itself, which compels Congress to protect such rights by appropriate legislative action. U.S. Const. art. 1, § 8, cl. 8 ("To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries"); 17

U.S.C. § 501(a)- (b) (permitting copyright holders to pursue infringement actions). In that sense, there is nothing hypothetical or ephemeral about Plaintiff's claims.

 *11  On the other hand, while there may be privacy issues at stake and even First Amendment defenses available to the John Doe defendants, that is the part of this case that is truly speculative. The Plaintiff's right to take reasonable and measured steps to identify the real infringers should not be impeded by the possibility that other privacy interests may be implicated, particularly where, as this Court will discuss below, those concerns can be accounted for through use of protective orders.

In balancing Defendants' privacy interests with Plaintiff's right to pursue those who anonymously violate its intellectual property rights, this Court finds that entry of a limited protective order strikes the right balance of interest and that any concerns about misidentification or privacy exposure are easily assuaged through implementation of an appropriate protective order. Examples of such orders and limitations on publicity abound in this District and elsewhere. See, e.g., Manny Film LLC, 98 F. Supp. 3d at 696 (granting expedited discovery but directing the internet service provider to provide the internet subscriber with a copy of the order and a copy of the subpoena received from the plaintiff and upon receipt of the order and the subpoena, granting the internet subscriber twenty-one (21) days to quash the subpoena or move in the alternative for a protective order. Further, the court ordered that the ISP shall not provide any responsive information to the plaintiff until the latter of the expiration of twenty-one (21) days or resolution of any motion to quash or for a protective order); Strike 3 Holdings, LLC v. Doe, No. 18-cv-16593, 2019 WL 4745360, at *7 (D.N.J. Sept. 30, 2019) (declining to issue a protective order but permitting the plaintiff to proceed anonymously); Strike 3 Holdings, LLC v. Doe, 330 F.R.D. 552, 556–57 (D. Minn. 2019) (entering a comprehensive, multifaceted protective order to aid in protecting privacy interests and limit risks of embarrassment and misidentification).

This Court will leave to the able Magistrate Judge the task of crafting a protective order that balances the Plaintiff's right to pursue its claims and the concomitant right of access to court proceedings enjoyed by the public with the legitimate privacy interests it may later identify. Those privacy interests, however, do not warrant denial of Plaintiff's discovery requests.

**CONCLUSION**

Experienced federal litigators often confront the same federal rules day in and day out. For example, Federal Rules of Civil Procedure 4 (Service), 8 (General Rules of Pleading); 11 (Signing Pleadings, etc.), 26 (Duty to Disclose, etc.), 56 (Summary Judgment) and 65 (Injunctions and Restraining Orders) are like old friends and comfortable clothes. But there is one rule that is often overlooked and that is a mistake because the drafters made it the first rule presumably for a reason. Federal Rule of Civil Procedure 1 provides that the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Plaintiff has asserted a valid copyright claim. Unless the rules are construed to allow some reasonable method to determine against whom that claim should be asserted, Plaintiff will have presumably suffered a federal statutory wrong with no remedy. That is not just. [5]

 *12  For the reasons stated above, the Court will grant Plaintiff's appeal (ECF No. 31) and reverse the learned Magistrate Judge's decision. On remand, the court shall fashion a protective order, to be entered in the Magistrate Judge's discretion, balancing on the one hand the public's right of access to court proceedings and on the other hand any legitimate privacy interests to be identified by the court.

Once the Magistrate Judge has entered its protective order, Plaintiff shall be granted leave to serve Defendants' ISPs with a Rule 45 subpoena seeking the names and addresses of the subscribers assigned to the IP addresses identified in the respective complaints, limited in scope to the time periods of the alleged infringing activity outlined in the respective complaints and exhibits thereto.

Further, Plaintiff shall be granted an extension of time within which to serve Defendants with process. This Court leaves it to the able Magistrate Judge to determine the appropriate length of that extension, which may be impacted by the scope of the protective order entered.

An appropriate Order will issue.

**All Citations**

Slip Copy, 2020 WL 3567282

# Footnotes

1 See Case No. 1:18-cv-2674, ECF No. 33 (Order of the Chief Judge assigning the above-captioned matters to this Court pursuant to Local Civil Rule 40.1(e)).

2 Plaintiff recognizes that the individual matters and motions before the Court are nearly identical. See Strike 3 Holdings, LLC v. Doe, No. 18-cv-12585 (NLH/JS), 2019 WL 5446239, at *1 n.1 (D.N.J. Oct. 24, 2019) (citations omitted) ("Strike 3 acknowledges its complaints are uniform."). Therefore, for purposes of judicial economy and clarity, the Court cites to the record in this Opinion by referring to an exemplar matter, 18-cv-2674-NLH-JS.

3 According to Plaintiff, BitTorrent is a system designed to quickly distribute large files over the Internet. (ECF No. 1 at ¶17). Instead of downloading a file, such as a movie, from a single source, Plaintiff alleges that BitTorrent users are able to connect to the computers of other BitTorrent users in order to simultaneously download and upload pieces of the file from and to other users. (ECF No. 1 at ¶17). To use BitTorrent to download a movie, the user has to obtain a "torrent" file for that movie, from a torrent website. (ECF No. 1 at ¶18). The torrent file contains instructions for identifying the Internet addresses of other BitTorrent users who have the movie, and for downloading the movie from those users. (ECF No. 1 at ¶18). Once a user downloads all of the pieces of that movie from the other BitTorrent users, the movie is automatically reassembled into its original form, ready for playing on the recipient's device. (ECF No. 1 at ¶19).

4 The Magistrate Judge found, as this Court now finds, that the information Plaintiff seeks is relevant and discoverable. Strike 3 Holdings, 2019 WL 5446239, at *6 ("the Court acknowledges that the information Strike 3 requests is relevant under Fed. R. CIV. P. 26(b)(1)."). The Magistrate Judge correctly recognized that "[e]ven if an IP subscriber is not the infringer, he/she is likely to know relevant information regarding who used their internet access." Id. This Court agrees.

5 Reformers examining the Federal Rules of Civil Procedure for ambiguity might be well advised to consult other codified rules of procedure that expressly allow for the pleading of John Doe placeholder defendants and the use of pre-complaint petitions to identify potential defendants otherwise unknown to the plaintiff at the outset of a case. See, e.g., N.J. Ct. Rule 4:26-4 ("In any action ... if the defendant's true name is unknown to the plaintiff, process may issue against the defendant under a fictitious name, stating it to be fictitious and adding an appropriate description sufficient for identification"); N.J. Ct. Rule 4:11-1(a) ("A person who desires to perpetuate his or her own testimony or that of another person or preserve any evidence or to inspect documents or property or copy documents pursuant to R. 4:18-1 may file a verified petition, seeking an appropriate order, entitled in the petitioner's name, showing: (1) that the petitioner expects to be a party to an action cognizable in a court of this State but is presently unable to bring it or cause it to be brought; (2) the subject matter of such action and the petitioner's interest therein; (3) the facts which the petitioner desires to establish by the proposed testimony or evidence and the reasons for desiring to perpetuate or inspect it; (4) the names or a description of the persons the petitioner expects will be opposing parties and their addresses so far as known; (5) the names and addresses of the persons to be examined and the substance of the testimony which the petitioner expects to elicit from each; and (6) the names and addresses of the persons having control or custody of the documents or property to be inspected and a description thereof") (emphasis added). While the use of John Doe pleading in federal court is commonplace, this case demonstrates that the practice is not without controversy and confusion as to its proper use. In the view of this Court, procedure is best codified rather than left to the vagaries of federal common law and judge-made rules. See 139 A.L.R. Fed. 553 ("[t]here are no federal statutes or procedural rules that provide for the use of fictitious or 'John Doe' defendants in federal court. However, plaintiffs have, with varying results, included fictitious or Doe defendants in their complaints") (emphasis added). Such reforms may be especially important in the age of the internet which both allows for and incentives anonymity and the use of fictious names by those who engage in tortious and other unlawful conduct.

**End of Document**　　　　　© 2020 Thomson Reuters. No claim to original U.S. Government Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2020, I electronically filed the foregoing letter with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. Amicus is a registered CM/ECF user, and service will be accomplished by the appellate CM/ECF system. However, since John Doe subscriber assigned IP address 73.180.154.14 is unrepresented, and since I still do not know his or her identity, I was unable to serve him or her with a copy of this letter.

By: /s/ *Lincoln D. Bandlow*
Lincoln D. Bandlow